FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -7 AM 10: 16

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANITA MAURICE, WIFE OF/ AND<br>JERRY L. MOORE, JR. | CIVIL ACTION |
| VERSUS | NO. 04-3105 |
| ELI LILLY&CO. | SECTION "K"(1) |

## ORDER AND REASONS

Before the Court are (1) Defendant Eli Lilly and Company's Motion to Dismiss Plaintiffs' Original and First Amended Complaints and Motion for Summary Judgment (Doc. 24)[1]; a Motion to Stay filed by Anitra Maurice, wife of/and Jerry L. Moore, Jr. ("Plaintiffs") (Doc. 31); and Vaccine Defendants' Motion to Dismiss (Doc. 52). The Court will first address the Motion to Dismiss filed by Eli Lilly and Company ("Lilly") (Doc. 24); it will then take up the Motion to Dismiss filed by the "Vaccine Defendants" Sanofi Pasteur, Inc. ("Pasteur"), Merck & Co., ("Merck"), Wyeth (formerly known as American Home Products Corp. ("Wyeth") and SmithKline Beecham Corp. ("SmithKline"); finally it will decide the issue of staying this matter as requested by both plaintiffs and the Vaccine defendants.

---

[1] As noted in the Court's Order of July 28, 2005, the Court has deferred ruling on the Motion for Summary Judgment contained in this motion and will not be addressed herein.

I.      **Background**

Plaintiffs contend that their minor child, Jerry L. Moore, III, ("the Minor Child") who was born on September 4, 2001, received certain juvenile vaccinations which were manufactured by Merck, Pasteur, Wyeth, and SmithKline and which contained Thimerosal, a product which contains mercury. This product was allegedly produced by Lilly. Plaintiffs contend that Thimerosal is a highly toxic preservative which was unnecessarily added to the vaccines by the manufacturers and which caused the Minor Child to suffer from severe neurological deficits, learning disabilities, developmental delay, gastrointestinal problems, seizures and toxic neurological effects of mercury poisoning. (Amended Complaint, ¶ 2).

Plaintiffs have filed a claim on behalf of the Minor Child pursuant to the National Childhood Vaccine Injury Compensation Act ("the Vaccine Act"), 42 U.S.C. §§ 300aa-1 *et seq*. in the United States Court of Federal Claims, Office of Special Masters in the Autism Omnibus Proceeding, Civil Docket no. 1:04-vv-00766-UNJ ("Autism Omnibus Proceeding"). The Vaccine Act requires that before an individual who has sustained vaccine related injuries (or the legal representatives of such an individual) files a civil suit, he or she must first file a petition in the Vaccine Court as this claims court is known. Discovery in the Autism Omnibus Proceeding is on-going and the seminal issue as to whether Thimerosal-containing vaccines generally can cause or aggravate autism will be decided in that matter and then, the decision will be applied to the individual autism cases therein.

Plaintiffs have also sued the defendants in this case for their own personal damages contending that because of defendants' negligent and/or intentional acts and/or omissions, they have incurred and will continue to incur emotional distress; past present and future loss of consortium

with the Minor Child; loss of love and affection, loss of enjoyment of life, loss of life-style, and other hedonic damages; and medical and other expenses. In addition they alleged that they have incurred and will continue to incur loss of income and earning capacity resulting from their time spent in encouraging and nurturing the development of the Minor Child, researching appropriate treatments for the Minor Child and appointments with doctors and others in an effort to treat the child's condition. (Amended Complaint, ¶ 7).

With respect to Lilly, specifically, Plaintiffs contend that Lilly is liable for its negligent and/or fraudulent misrepresentation of the safety of Thimerosal. (Amended Complaint, ¶23). They maintain that defendants manufactured, marketed, sold, distributed, warranted, licensed and/or packaged this allegedly unreasonably dangerous product and were deceptive in their marketing and failure to disclose the dangerousness of the product. At paragraph 34 of the Amended Complaint, Plaintiffs specify 12 separate actions by which Lilly allegedly violate the laws of Louisiana and then conclude:

"including but not limited to the Louisiana Products Liability Act (La. R.S. 9:2800.56, unreasonably dangerous in design; and La. R.S. 9:2800.51, unreasonably dangerous because of inadequate warning); the Louisiana Unfair and Deceptive Trade Practices Act; laws concerning redhibitory vices and defects, intentional inflection (sic) of emotional distress and all other acts and/or omissions, whether negligent and/or intentional, which may be proven at the trial of this cause."

(Amended Complaint, ¶ 34).

## II. The Motions

Lilly has moved the Court:

(1) to dismiss any claims not recognized under Louisiana Products Liability Act. La. Rev. Stat. 9:2800.51, *et seq.* ("LPLA") as such relief is the exclusive remedy available to plaintiffs;

(2) to dismiss the mental anguish claim under La. Civ. Code art. 2315.6 because plaintiffs have not pleaded sufficient facts to support such a claim; and

(3) to dismiss the Louisiana Unfair Trade Practices Act claim as perempted.

The Vaccine defendants seek to dismiss the claims against them because they are "vaccine-related" injuries which are covered by the Vaccine Act and as such are pre-empted by the Act and require exhaustion of that remedy prior to filing suit. Further, as to those "individual capacity" claims of persons who did not themselves receive the vaccines, the Vaccine defendants seek a stay of this matter. Finally, plaintiffs also seek a stay based on the premise that the central issue of causation will be decided in the Autism Omnibus Proceeding and judicial economy mandates the stay of this matter.

### III. Standard for a Motion Filed Pursuant to Fed. R. Civ. P. 12(b)(6)

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the Conley test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." Oppenheimer v. Prudential Securities, Inc. 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. Hitt, 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. Cinel v. Connick, 15 F.3d 1338, 1341 (5th Cir. 1994).

Id. at 161-62. With this standard in mind, the Court will now turn to Lilly's Motion to Dismiss.

### IV. The Lilly Motion

#### A. LPLA Provides the Exclusive Remedies Under the Law

The Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damages caused by their products. A claimant may not recover from a

5

manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter. Conduct or circumstances that result in liability under this Chapter are "fault" within the meaning of Civil Code Article 2315." La. Rev. Stat. 9:2800.52. *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995). In *Jefferson v. Lead Ins. Assoc., Inc.*, 930 F. Supp. 241 (E.D.La. 1996), which was affirmed and adopted by the United States Court of Appeals for the Fifth Circuit, 106 F.3d 1245 (5th Cir. 1997), Judge Vance succinctly explained:

> The LPLA provides that a manufacturer of a product is liable to a claimant for damage "proximately caused" by a characteristic of the product that rendered it "unreasonably dangerous" when the damage arose from a reasonably anticipated use of the product by the "claimant or another person or entity." *Id.* § 9:2800.54A. A claimant may prove that the product was "unreasonably dangerous" only under one of the following four theories: (1) that it was unreasonably dangerous in construction or composition; (2) that it was unreasonably dangerous in design; (3) that it was unreasonably dangerous because of inadequate warning; or (4) that it was unreasonably dangerous because of nonconformity to an express warranty. *Id.* at § 2800.54(B)(1-4). Thus, the elements of a products liability cause of action under the LPLA are proof of the following:
> 1. that the defendant is a manufacturer of the product;
> 2. that the claimant's damage was proximately caused by a characteristic of the product;
> 3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and
> 4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.
>
> *Id.* § 2800.54; *see generally* J. Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La.L.Rev. 565 (1989) (hereafter "Kennedy"). While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer. *See Automatique New Orleans, Inc. v. U-Select-It, Inc.,* 1995 WL 491151 at *3 n. 2 (E.D.La. Aug. 15, 1995) (no independent negligence claim); *Hopkins v. NCR Corp.,* 1994 WL 757510 at *1-2 (M.D.La. Nov. 17, 1994) (strict liability under article 2317 not cognizable theory against manufacturer); Kennedy, *supra,* at 589-90. Further, breach of implied warranty or

> redhibition is not available as a theory of recovery for personal injury, although a redhibition action is still viable against the manufacturer to recover pecuniary loss. Kennedy, *supra,* at 588.

*Id.* at 244-45. Thus, the definitions of "manufacturer" and "product" determine the applicability of the LPLA.

This Court previously examined the LPLA definition of "manufacturer" in *Jackson v. Pneumatic Production Corp.*, 2001 WL 1327656 (E.D.La. October 26, 2001) wherein it stated:

> For purposes of the LPLA, a manufacturer is defined as (1) a person who labels a product as his own or otherwise holds himself out to be the manufacturer of the product; (2) a seller who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage; (3) one who incorporates into the product a component part or part manufactured by another manufacturer; and (4) a seller in the business of importing or distributing a product for resale and is the alter ego of a foreign manufacturer. La. R.S. 9:2800.53(1)(a)-(d). *See also Floyd v. Wall Rope Indus.,* No. Civ. A. 00-0094, 2000 WL 306681, at *2 (E.D.La. Mar. 23, 2000) (Livaudais, J.) (*quoting Zehner v. Nordskog Indus., Inc.,* No. Civ. A. 92-2508, 1992 WL 233984, at *2 (E.D.La. Sept. 2, 1992) (Feldman, J.)). Additionally, "Louisiana jurisprudence instructs that a non-manufacturer seller of a defective product may also be responsible for damages, but only if he knew or should have known that the product sold is defective. See La. C.C. 2545." *Id. See also Parks v. Baby Fair Imports, Inc.* 726 So.2d. 62, 64 (La.App. 5th Cir.1998); *Ferruzzi, U.S.A., Inc. v. R.J. Tricon. Co.,* 645 So.2d 685, 688 (La.App. 4th Cir.1994).

*Id* at *2. Finally, the LPLA defines "product" as " a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable." La. Rev. Stat. 9:2800.53(3).

Plaintiffs contend that if Lilly manufactured the Thimerosal, then they have alleged a viable cause of action under the LPLA, and tacitly admit that they are limited to the LPLA remedies. However, they maintain that in the event Lilly did not manufacture Thimerosal, that is if they were

7

a non-manufacturer seller, distributor, or marketer then the non-LPLA claims as stated grounded in tort law, intentional, negligent and/or fraudulent and redhibition may be alleged in the alternative.

This position ignores the reality of the case at hand–that is that Lilly is by operation of the LPLA a manufacturer. There is no allegation that plaintiffs directly purchased Thimersol from Lilly and as a result the Minor Child directly ingested it. The Minor Child came into contact with Thimersol as a component of the vaccines. Thus, plaintiffs' argument that Lilly could be liable to them as a "non-manufacturer seller" falls short. The vaccines at issue had as a component part Thimersol which Lilly allegedly placed into the stream of commerce which was purchased by one or more of the Vaccine defendants. As such, Lilly is a manufacturer under LPLA. Plaintiffs have failed to articulate a possible factual basis for categorizing Lilly as anything other than a manufacturer under the LPLA and the Court is at a loss to derive one.[2] Accordingly, all claims for negligence, fraud, negligent misrepresentation, intentional misrepresentation, intentional infliction of emotional distress and redhibition, which were the non-LPLA claims identified by plaintiffs as such in their Memorandum in Opposition to the subject motion shall be dismissed. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 262 (5th Cir. 2002); *Grenier v. Medical Engineering Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000); *Jefferson*, 930 F. Supp. at 246.

---

[2]The Court recognizes that under *Badon v. R.J.R. Nabisco*, 236 F.3d 282 (5th Cir. 2000), the Fifth Circuit recognized that a cause of action for redhibition and breach of warranty on behalf of a cigarette user may exist with respect to a distributor/wholesaler of cigarettes. However, this case is not one where in plaintiffs purchased Thimerosol from a retailer that was supplied the substance by Lilly. Thimerosol became a component of the vaccine and as such, Lilly is not subject to a *Badon* suit as the subject facts are readily distinguishable from *Badon*.

B.     **Mental Anguish Claim under La. Civ. Code art. 2315.6**

Lilly also seeks the dismissal of any claim raised under article 2315.6(A) of the Louisiana Civil Code which provides for claims for mental anguish and emotional distress where the liability for damages is caused by injury to another. In other words, to the extent that plaintiffs seek remuneration for mental anguish and emotional distress caused by injury to the Minor Child, Lilly seeks dismissal of this claim as well. As the LPLA provides the exclusive remedy for injuries allegedly caused by Lilly for the reasons set forth above, this claim must be dismissed.

Furthermore, the Court concurs in Lilly's argument that the very facts alleged are insufficient to state a claim under this codal article. Under Louisiana law, claims for negligent infliction of emotional distress are limited to "persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter." La. Civ. Code art. 2315.6(A). In addition, "the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable." La. Civ. Code art. 2315.6(B). As noted by Judge Vance in *Case v. Merck & Co.*, 2002 WL 31478219 (E.D.La. November 5, 2002):

> The Louisiana Supreme Court has observed that "emotional distress usually occurs contemporaneously with the observance of the event." *Trahan v. McManus, M.D.*, 728 So.2d 1273, 1279 (La.1999). The *Trahan* court held that "[i]n order to recover, the claimant who observes the injury-causing event ... must be contemporaneously aware that the event has caused harm to the direct victim." *Id.*

9

*Id* at *4. Here, Plaintiffs, as in *Case,* do not contend that they witnessed the vaccinations of the Minor Child and that they were aware, at that time, that the vaccinations caused the Minor Child harm. Rather, plaintiffs assert that the Minor Child's injuries came to light in the months and years following the vaccinations. For this additional reason, the Court dismisses with prejudice plaintiffs' claims of negligent inflection of emotional distress.

### C. Louisiana Unfair Trade Practices Act Claim

Plaintiffs have also stated a claim for damages under the Louisiana Unfair Trade Practices Act, La. Rev. Stat. 51:1405, *et seq.* ("LUTPA"). The statute provides that any person who suffers ascertainable loss of money as the result of the use by another person of an unfair or deceptive acts may bring an action individually but not in a representative capacity to recover actual damages. La. Rev. Stat. 51:1409. Moreover, the statute is subject to a one-year peremptive period for private actions. *Canal Marine Supply, Inc. v. Outboard Marine Corp.*, 522 So.2d 1201 (La. App. 4th Cir. 1988). The subject suit was filed on November 15, 2004. All of the "misdeeds" of Lilly alleged by plaintiffs occurred prior to November 15, 2003. Furthermore, plaintiffs have not opposed this portion of Lilly's motion. Thus, the motion to dismiss must be granted in this regard as well.

### V. Vaccine Defendants' Motion to Dismiss

The Vaccine defendants have moved the Court to dismiss this case based on their contention that their claims concern alleged "vaccine-related" injuries, and as such, should be dismissed as they

are pre-empted by the Vaccine Act noted above. This contention is devoid of merit except with respect to damages sought for "recovery of all past and future costs and expenditures necessitated by the injuries suffered by the Minor Child" which plaintiffs concede in their response should be dismissed. As stated by Judge Vance in *Case, supra,* at *2:

> Courts have long held that the Vaccine Act does not bar civil suits brought by parents, on their own behalf, for damages arising from the vaccine-related injuries of their children. *Schafer,* 20 F.3d at 6 (noting that the Vaccine Court "has held that a parent *can* both obtain a loss of consortium 'award' from a state court ... and also obtain compensation for her vaccinated (and injured) child from the Vaccine Court"); *Owens v. American Home Products,* 203 F.Supp. 748, 756 (S.D.Tex.2002); *see also Cook v. Children's Medical Group,* 756 So.2d 734, 741 (Miss.1999); *McDonald v. Lederle Laboratories,* 775 A.2d 528, 535 (N.J.Sup.Ct.2001). As this Court noted in its Order and Reasons of November 5, 2002, Congress could have swept loss of consortium claims and lost wages claims within the purview of the Act, but it did not do so.

Thus, the Motion to Dismiss must be denied except with respect to the claims for past and future expenses incurred by the Minor Child.

## VI. Motions to Stay

Both Plaintiffs and the Vaccine Defendants seek a stay of this matter pending the outcome of the Omnibus Autism Proceeding with respect to the Minor Child. The Court again concurs with Judge Vance's reasoning in the *Case* matter as to the Court's inherent in the power to control the disposition of cases on its docket and will stay this matter.

> The Court begins, as it must, by recognizing its "virtually unflagging obligation" to exercise the jurisdiction that it is given. *Black Sea Investment, Ltd. v. United Heritage Corporation,* 204 F.3d 647, 650 (5th Cir.2000). As Judge Rubin succinctly stated, "[f]ederal courts exist to decide controversy." *Itel Corporation v. M/S Victoria U,* 710 F.2d 199, 202 (5th Cir.1983). A court

nevertheless possesses the inherent power to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co. Same,* 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936). Use of the Court's inherent power to stay must not be abused. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.,* 761 F.2d 198, 303 n. 6 (5th Cir.1985). Absent statutory authorization, the moving party bears a heavy burden to show why a stay should be granted. *Id.* Further, the Court "should tailor its stay so as not to prejudice other litigants unduly." *Id.* A stay may be granted to avoid hardship or inequity, but courts should "prevent the ossification of rights which attends inordinate delay." *Itel,* 710 F.2d at 203 (internal citations omitted).

A number of factors persuade the Court that a stay would economize the time of the Court, the counsel and the litigants. An essential portion of plaintiffs' case is now currently pending before an adjudicative tribunal investigating the causal link between thimerosal and injuries like those sustained by Case Redding. In order to recover for loss of consortium, plaintiffs must establish that defendants caused and are liable for the injuries allegedly sustained by Case Redding. *Keener v. Mid-Continent Casualty,* 817 So.2d 347, 363 (La.Ct.App.2002); *Junot v. Morgan,* 818 So.2d 152, 158 n. 5 (La.Ct.App.2002); *Gilbert v. Laborde,* 632 So.2d 1162, 1169 (La.Ct.App.1994). The issue of whether thimerosal caused Redding's injuries is now before the Vaccine Court, which is handling, in addition to Redding's petition, hundreds of similar claims. (*See* Autism General Order # 1, United States Court of Federal Claims, Office of Special Masters, July 3, 2002, Attached to Def.'s Mot. to Reconsider, Ex. 2.) The Chief Special Master has set forth a two-step procedure whereby, first, the general issue of whether thimerosal causes autism and similar disorders will be resolved, and, second, if it does, whether this conclusion can be applied to each of the individual cases, including Case Redding's. (*Id.* at 3.) Undoubtedly, a number of experts, independent or otherwise, will be retained. Requiring the parties to conduct a parallel inquiry, on a different timetable, to determine plaintiffs' right to recover for loss of consortium is duplicative, expensive, and wasteful.

     Finally, the Court notes that a stay of limited duration does not cause undue prejudice to plaintiffs. A stay reduces litigation expenses for plaintiffs as well. Further, plaintiffs' interest in the Vaccine Court's proceedings is not attenuated, as their child's petition is pending there.

In light of these considerations, the Court concludes that stay is in the interest of justice. The Court is not aware of any other court that has denied a stay of parental claims for loss of consortium when their child has a claim pending in the Vaccine Court. To the contrary, on facts nearly identical to those involved in this lawsuit, other courts have ordered stays. *See Russak v. Aventis Pasteur,* No. A-02-CA-480-SS, at 8 (W.D.Tex. Sept. 9, 2002); *Owens v. American Home Products Corporation,* No. G-02-185, at 1 (S.D.Tex. July 12, 2002). In *Owens,* Judge Kent

> stayed a lawsuit involving parental claims arising out of thimerosal-related injuries for a limited time pending developments in the Vaccine Court. Given that a stay must not give rise to a lengthy delay, the Court agrees that a stay of limited duration is appropriate. *See Saybolt,* 761 F.2d at 203 n. 6 (citing *Landis,* 299 U.S. at 257, 57 S.Ct. at 167). The Court grants defendants' motion to stay and hereby stays this lawsuit until August 1, 2003.

*Case v. Merck & Co.* 2002 WL 31478219, *2 -3 (E.D.La. 2003). Accordingly,

**IT IS ORDERED** that Defendant Eli Lilly and Company's Motion to Dismiss Plaintiffs' Original and First Amended Complaints and Motion for Summary Judgment (Doc. 24) is **GRANTED** dismissing on non-LPLA based claims brought against Eli Lilly & Company, dismissing the La. Civ. Code art. 2315.6 claim and the LUPTA claim.

**IT IS FURTHER ORDERED** that the Vaccine Defendants' Motion to Dismiss (Doc. 52) is **GRANTED** with respect to the recovery of all past and future costs and expenditures necessitated by the injuries suffered by the Minor Child and **DENIED** in all other aspects save the alternative request to stay this matter;

**IT IS ORDERED** that the Motion to Stay filed by Anitra Maurice, wife of/and Jerry L. Moore, Jr. ("Plaintiffs") (Doc. 31) and contained in Vaccine Defendants' Motion to Dismiss (Doc. 52) is **GRANTED**. The Clerk shall statistically close this matter pending a final resolution to the Minor Child's claim in the Omnibus Autism Proceeding. It shall be incumbent upon plaintiffs to move to reopen this matter at the appropriate time.

Houma, Louisiana, this 3rd day of November, 2005.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE

13

a non-manufacturer seller, distributor, or marketer then the non-LPLA claims as stated grounded in tort law, intentional, negligent and/or fraudulent and redhibition may be alleged in the alternative.

This position ignores the reality of the case at hand–that is that Lilly is by operation of the LPLA a manufacturer. There is no allegation that plaintiffs directly purchased Thimersol from Lilly and as a result the Minor Child directly ingested it. The Minor Child came into contact with Thimersol as a component of the vaccines. Thus, plaintiffs' argument that Lilly could be liable to them as a "non-manufacturer seller" falls short. The vaccines at issue had as a component part Thimersol which Lilly allegedly placed into the stream of commerce which was purchased by one or more of the Vaccine defendants. As such, Lilly is a manufacturer under LPLA. Plaintiffs have failed to articulate a possible factual basis for categorizing Lilly as anything other than a manufacturer under the LPLA and the Court is at a loss to derive one.[2] Accordingly, all claims for negligence, fraud, negligent misrepresentation, intentional misrepresentation, intentional infliction of emotional distress and redhibition, which were the non-LPLA claims identified by plaintiffs as such in their Memorandum in Opposition to the subject motion shall be dismissed. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 262 (5th Cir. 2002); *Grenier v. Medical Engineering Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000); *Jefferson*, 930 F. Supp. at 246.

---

[2] The Court recognizes that under *Badon v. R.J.R. Nabisco*, 236 F.3d 282 (5th Cir. 2000), the Fifth Circuit recognized that a cause of action for redhibition and breach of warranty on behalf of a cigarette user may exist with respect to a distributor/wholesaler of cigarettes. However, this case is not one where in plaintiffs purchased Thimerosol from a retailer that was supplied the substance by Lilly. Thimerosol became a component of the vaccine and as such, Lilly is not subject to a *Badon* suit as the subject facts are readily distinguishable from *Badon*.

8